Fremont-Smith, J.
Considering the facts most favorable to the plaintiff, there is evidence upon which the jury could find that the plaintiff, a girl who was 7 years of age at the time, was enrolled on December 11,1996, in the “Skiwee” Ski School program at Jiminy Peak, which is located in Hancock, Massachusetts. This program was advertised, in a promotional brochure, to be “safe, fun, and educational.” In a previous lesson, her skills had been determined to be “Level 4,” indicating she was capable of doing snow plow turns, but not parallel skiing. It is the policy of the defendant’s ski school generally to group children both by skill level, and by age within a skill level, as older children are generally better physically developed and ski more aggressively.
When Nicolle was placed in a group of level four 7-year-olds, however, she began to cry and whine, because she wanted to ski with her brother and cousin, who were older. After she had continued to ciy for several minutes, a ski instructor approached her and asked if she would be able to keep up with the older group. Her brother John replied that she could, although she might be slower than the older skiers, so *584 they would sometimes need to wait for her. The ski instructor then told Nicolle she could join the older “Explorer” group, rather than remain with the level four group of students her age (the “Skiwee” group).
Throughout the morning, Nicolle had difficulty and was consistently the slowest and last in her group to come down the slope. Two or three times she was unable to control her skis, and skied off the trail into the woods, where the instructor had to help her extricate herself and assist her back onto the trail. On the final descent that morning, the group took a steeper trail, with Nicolle continuing to bring up the rear. The instructor was at the top of the incline, and failed to see her ski off the trail into the woods, out of control, resulting in her colliding with trees and suffering serious injuries. When the instructor skied down the slope, he went right by her, not knowing she had gone into the woods, and only when he joined the rest of the group at the bottom and took a head count, did he realize that she was missing.
As noted above, she was then found off the trail with life-threatening injuries, was transported by toboggan to the base lodge, by ambulance to Berkshire Medical Center, and by helicopter to Albany Medical Center, where she received medical treatment for fractures to her cheek bone, jaw, and leg, and bruises to her lung and liver.
Defendant argues that, regardless of any negligence of the employees of the defendant Jiminy Peak, defendant is immune from liability because Nicolle lost control of her skis and collided with an obstacle (trees), a type of collision which is defined by statute as an “unavoidable, inherent risk of skiing.” M.G.L.c. 143, §71O.[1] Defendant has moved for directed verdict, which the Court denies for the following reasons.
A literal reading of Chapter 143, §71O absolves a ski operator from any liability resulting from a skier’s collision with another person or object (such as trees), even if the accident occurred as a result of the negligence, or even as a result of the wilful, wanton and reckless conduct, of a ski operator’s employee. However, the Supreme Judicial has refused to construe the statute so as to reach such an unreasonable and unjust result. In Tilley v. Brodie Mountain Ski Area, Inc., 412 Mass. 1009 (1992), an employee of the mountain (a Ski Patrol member) negligently collided with a patron skier, causing serious injuries. The defendant, as here, defended on the grounds that the collision of a patron skier with another person or object is defined as an “inherent risk of skiing” pursuant to §71O, so that there could be no liability. The Court, however, found that G.L.c. 143, §71O does not exempt a ski operator from liability for injuries caused by its agent. Id., 1009. The Court said, at 1010:
General Laws c. 143, §71O (1990 ed.), embodies the Legislature’s judgment that it would be both physically impossible and economically intolerable to require ski areas to guard against and assume responsibility for the negligence of their patrons. Although it cannot be expected to select and control its patrons, a ski area is able to exercise a great degree of control in the selection, training and supervision of its ski patrol members. We do not believe that Legislature intended to alter the well-established common law rule that an employer is liable for the negligence of its agents or employees. A statute should not be interpreted to require a radical change in established public policy or existing law [if] the act does not manifest any intent that such change should be effected.’ [Citing cases] . . . So, too, in this case there is nothing in the statutory scheme of G.L.c. 143 §71H—71S, that indicates a legislative intent to insulate the ski area operation from liability for the negligence of its agents or employees.
Thus, the Supreme Judicial Court, in effect, held that an accident which results from the negligence of one of its employees is not an "unavoidable, inherent risk of skiing” so as to insulate the ski area, even though the actual accident by way of a collision with another person or object which resulted, is so defined in the statute. Tilley, moreover, has been recently cited with approval in Saldarini v. Wachusett Mountain Ski Area, Inc., 422 Mass. 683 (1996), where the Courtheld that a ski area was not liable for a skier’s collision with another unidentified skier, but distinguished Tilley on the grounds that, in Tilley, the injury had been caused by the negligence of defendant’s own employee.
The Courts of other states have similarly interpreted analogous Ski Statutes to avoid “absurd” or unjust results. In Adie, v. Temple Mountain Ski Area, Inc., 238 A2d, 738 N.H. (1968) (where a ski school employee negligently left a ski student with faulty rental equipment unattended in the ski area without proper instructions), the ski operator was held not to be immunized by the New Hampshire statute, which, like the Massachusetts statute at issue here, made it the duty of each skier to maintain control of speed and course and to avoid collisions with any person or object. Pointing out that the New Hampshire statute did not enumerate ski instruction as an immunized activity, the Court said: “If the Legislature had intended to bar skiers from actions against an operator for negligent instruction or negligent rental of defective equipment, some regulation of their operations in these areas would have appeared in the statute.”
Similarly, in Ghionis v. Deer Valley Resort, Co., Ltd., 838 F.Supp. 789 (D.Utah 1993), the United States District Court in Utah, interpreting an analogous Ski Statute, found “that it did not protect the ski area from a suit alleging that the ski instructor had failed to inform plaintiff of the increased risks of skiing in thick (“crud”) snow during the spring and failing to inspect her equipment to determine if it was appropriate. Defendant had skied into such thick snow, her bindings had not released, and she was injured. Even *585 though the Utah Skiing Act expressly provided that "no skier may make any claim against, or recover from, any ski operator for injury resulting from any of the inherent risks of skiing," which were defined to include “changing weather conditions . . . [and] snow or ice conditions,” the court pointed out that the objective of the Ski Statute was to retain common-law protections traditionally afforded to defendants, such as the doctrine of “primary assumption of risk,”[2] and to limit the obligations of ski areas by defining more clearly the duties of skiers. The court concluded, however, that “the duty owed by a ski resort to students enrolled in the resort’s instructional program, is significantly higher than the duty of the nonstudent patrons of the resort. The student pays a fee for ski instruction, and informs the resort that he or she is not knowledgeable about the skiing sport. The ski student is not in the position, through experience or knowledge to assume the risks of skiing, and relies upon his or her instructor to bring him or her up to the level of competence to assume those risks.” The court then inquired rhetorically how students could reasonably be expected to assume such risks, and concluded that “statutes ought to be interpreted to avoid absurd consequences”; holding that Deer Valley “may not rely upon the Utah Inherent Risks of Skiing Act to avoid the consequences of not fulfilling its duties to ski student Ghionis." Contra: Philippi v. Sipapu, Inc., 961 F.2d 1492 (10th Cir. 1992) (denying liability to an injured ski student under the New Mexico Ski Safety Act, because, in that court’s view, even a novice skier is deemed to assume the risk for variations in terrain under the New Mexico statute).
Similar concerns as those expressed in Ghionis with regard to the practical unreality and ethical unfairness of requiring a ski student to “assume the risk” for his injury, are expressed in Note, Ski Operators and Skiers, 14 N.Eng.L.Rev. 260 (1978), 273, 274, which note was cited with approval in Tilley, supra., for the proposition that the Massachusetts statute did not intend to effect a “radical change in established public policy or existing law.” In view of this, and for each of the reasons discussed above, defendant’s motions for a directed verdict are DENIED.

 This provides that “a skier skiing down hill shall have the duty to avoid any collision with any other skier, person or object on the hill below him . .. and the responsibility for the collision with any obstruction, man-made or otherwise, shall be solely that of the skier and not that of the operator ... A skier shall be presumed to know the range of his own ability to ski on any slope, trail or area. A skier shall be presumed to know of the existence of certain unavoidable risks inherent in the sport of skiing, which shall include, but not be limited to, variations in terrain, surface or subsurface snow, ice conditions or bare spots, and shall assume the risk of injury or loss caused by such inherent risks.

 At the time when the various “Ski Statutes” were being enacted in the various states, such common protections for defendants were being eroded by judicial decisions.